**UNITED STATES of America**

v.

**Phillip CYPRIAN, Sr., Leroy V. Williams, Louis Del Grosso, John F. Morales.**

**Crim. No. HCR 90–42.**

United States District Court, N.D. Indiana, Hammond Division.

Jan. 30, 1991.

Bernard A. Smith; Nancy Vecchiarrelli, U.S. Attys. Office, Cleveland, Ohio, for U.S.

David L. Chidester, Valparaiso, Ind., for Cyprian.

John L. Kelly, Jr., Merrillville, Ind., for Williams.

James E. Foster, Hammond, Ind., for Del Grosso.

Max Cohen, Merrillville, Ind., for Morales.

## MEMORANDUM OPINION AND ORDER

ALLEN SHARP, Chief Judge.

### I. Synopsis of the Law of Selective Prosecution [1]

■ In our criminal justice system, the government retains broad discretion of whom to prosecute. *United States v. Goodwin*, 457 U.S. 368, 380 n. 11, 102 S.Ct. 2485, 2492 n. 11, 73 L.Ed.2d 74 (1982). So long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion. *Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978).

■ Although prosecutorial discretion is broad, it is not unfettered. Selectivity in the enforcement of criminal laws is subject to constitutional constraints. *United States v. Batchelder*, 442 U.S. 114, 125, 99 S.Ct. 2198, 2205, 60 L.Ed.2d 755 (1979). In particular, the decision to prosecute may not be deliberately based upon an unjustifiable standard such as race, religion or other arbitrary classification, *Bordenkircher*, 434 U.S. at 364, 98 S.Ct. at 668, including the exercise of constitutional rights. *Goodwin*, 457 U.S. at 372, 102 S.Ct. at 2488.

■ A claim of selective prosecution attacks not the merits of the prosecutor's case against the defendant, but the prosecutor's choice to proceed against the defendant while declining to bring similar criminal charges against others who appear equally culpable. In effect, a defendant's selective prosecution challenge asks of the prosecutor, "Why have you singled me out?"

■ It is appropriate to judge selective prosecution claims according to ordinary equal protection standards,[2] *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962), which prohibit a state from taking action which would "deny to any person within its jurisdiction the equal protection of the laws." This guarantee, which applies with respect to the enactment of laws by the legislative branches, also extends to the conduct of the executive branches in the enforcement of these laws. In the oft-quoted language of *Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886):

Though the law itself be fair on its face and impartial in appearance yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution.

■ A claim of selective prosecution is not likely to succeed, for courts "have found only a handful of equal protection violations"[3] arising out of the charging decisions of prosecutors. This is because claimants bear a heavy burden to overcome the presumption of legal regularity in enforcement of the penal law by proving the three essential elements of a discriminatory prosecution claim: (1) that other violators

---

**1.** *See generally Wayte v. United States*, 470 U.S. 598, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985).

**2.** Although the fifth amendment, unlike the fourteenth, does not contain an equal protection clause, it does contain an equal protection com-

ponent. *Bolling v. Sharpe*, 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954).

**3.** Gifford, *Equal Protection and the Prosecutor's Charging Decision: Enforcing an Ideal*, 49 Geo. Wash.L.Rev. 659, 662 (1981).

similarly situated are generally not prosecuted; (2) that the selection of the defendant was intentional or purposeful; and (3) that the selection was pursuant to an arbitrary classification. (Each element is later discussed in greater detail.)

■ Although some authority is to be found that a selective prosecution claim is a "defense" which is to be raised during the course of the trial and sent to the jury as part of the case—just as with, say, a defense of self-defense—most commentators seem to hold otherwise. Because the issue of selective prosecution relates not to the guilt or innocence of the accused, but rather addresses itself to a constitutional defect in the institution of the prosecution, the claim should be treated as an application to the court for a dismissal or quashing of the prosecution and thus should be decided by the court.

■ Because courts presume that criminal prosecutions are undertaken in good faith, without intent to discriminate, the defendant bears the initial burden of demonstrating selective enforcement. *See Love v. State*, 468 N.E.2d 519 (Ind.1984), *cert. denied*, 471 U.S. 1104, 105 S.Ct. 2335, 85 L.Ed.2d 851 (1985). This burden exists as to all three elements of a selective prosecution claim.

■ A defendant's more immediate hurdle, however, is to make a sufficient showing to require that an evidentiary hearing be held. In a motion for an evidentiary hearing, the defendant must make out a prima facie case of selective prosecution.[4]

If the defendant meets this hurdle, he then has the burden of going forward with the evidence at the evidentiary hearing. *United States v. Falk*, 479 F.2d 616 (7th Cir. 1973).

Courts are understandably reluctant to require prosecutors to testify as to their motives in seeking an indictment, even when this might be the only way the defendant could establish his claim. Courts are likewise reluctant to order discovery of government documents which might reveal a prosecutor's motive because to hold otherwise would encourage the assertion of such defense, no matter how spurious, as a means of burdening criminal trials with massive discovery of material completely irrelevant to the defendant's case.[5] The result may be that discovery will be denied even when it would the only way the defendant could be expected to establish his claim.

II. Elements of a Prima Facie Case

A. Nonprosecution of Others. Many courts, both federal[6] and state, reflect the view that a defendant cannot prevail on a selective prosecution claim unless he shows, *inter alia*, that the law in question is generally not enforced against others similarly situated. This prong is not without its ambiguities or difficulties of proof.

First, it is not clear whether this prong requires that a defendant prove (1) only that other violators were not prosecuted, (2) that other violators were not prosecuted and that the government was *generally* aware that other violators were not being

---

4. *See Jarrett v. United States*, 822 F.2d 1438, 1443 (7th Cir.1987) (evidentiary hearing denied when defendant charged with armed robbery provided only mere allegations of improper motivation); *Taylor v. United States*, 798 F.2d 271, 274 (7th Cir.1986), *cert. denied*, 479 U.S. 1056, 107 S.Ct. 933, 93 L.Ed.2d 983 (1987) (evidentiary hearing denied when others similarly situated were prosecuted and therefore defendant could not provide sufficient facts to raise reasonable doubt as to prosecutor's purpose); *United States v. Kerley*, 787 F.2d 1147, 1148–49 (7th Cir.1986) (per curiam) (evidentiary hearing denied when evidence of statistical effects of Selective Service passive enforcement system does not establish prima facie case of intentional discrimination against him as an individual or as a member of a constitutionally protected class).

5. *See United States v. Mitchell*, 778 F.2d 1271, 1277 (7th Cir.1985) (motion to compel discovery on selective prosecution claim denied because defendant could not provide colorable basis for allegations that prosecutions motivated by racial reasons); *United States v. Kerley*, 787 F.2d 1147, 1150 (7th Cir.1986) (per curiam) (colorable basis is some evidence tending to show essential elements of defense; defendant presented no evidence that prosecution occurred "because he spoke out" and therefore not entitled to compelled discovery).

6. *See United States v. Scherer*, 523 F.2d 371 (7th Cir.1975), *cert. denied*, 424 U.S. 911, 96 S.Ct. 1108, 47 L.Ed.2d 315 (1976).

prosecuted, or (3) that other violators were not prosecuted and that the government knew of other *specific* violators who were not being prosecuted.

■ Second, the defendant must prove that the nonprosecuted offenders were in fact "similarly situated." In effect, this means the defendant must prove: (1) that the nonprosecuted offenders engaged in essentially the same act as the defendant, (2) as a result of which they violated the same statutes that the defendant is charged with violating, and (3) that the magnitude of the nonprosecuted offenders' violations was not materially different from that of the defendant.

A defendant will usually attempt to show that he has been singled out by presenting statistical evidence of the infrequency with which others similarly situated have been prosecuted. *Falk*, 479 F.2d 616. Because of the myriad of factors that could affect a prosecutor's decision to bring charges, however, including the strength of the evidence, the culpability of the offender, and the need to send out various enforcement signals, courts are generally unwilling to infer a discriminatory intent from nonenforcement statistics alone. For example, evidence comparing the percentage of blacks in the population with the percentage of prosecutions for certain kinds of offenses involving black defendants has been held insufficient to establish invidious discrimination. The proffered statistics seldom reveal anything about the number of minority and majority group members who in fact have committed the particular crimes or about how many violations by each group are known to law enforcement authorities.

■ B. Intentional or Purposeful. Both the federal[7] and state cases dealing with selective prosecution commonly assert that the defendant must prove the discrimination was intentional or purposeful. In *Oyler v. Boles*, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446, the Supreme Court declared there is no equal protection violation unless the selection was deliberately based upon

an unjustifiable standard. There are effectively three impermissible bases for prosecutorial selectivity, that is, three factors that may not motivate a prosecutor to proceed against a particular defendant: (1) race, religion, or other suspect classification; (2) a desire to impede the exercise of constitutional, usually first amendment, rights; and (3) personal animosity toward the defendant.

To satisfy the intent prong, a defendant must prove that one of these factors was instrumental in the prosecutor's decision to proceed against him. The degree to which the decision to prosecute must be motivated by an impermissible factor remains unclear, however. In *Wayte*, for example, the Court simply observed that the defendant had to prove that the prosecutor was "motivated by" a discriminatory purpose. *See Wayte*, 470 U.S. at 608, 105 S.Ct. at 1531. Because of the imprecision of such formulations as "motivated by" and "based upon," it is uncertain whether the impermissible basis must be: (1) the sole or dominant factor in the charging decision, (2) a lessor "but for" cause of the prosecutor's selection of the defendant, or (3) only one of a number of reasons, however insignificant, for the prosecutor's decision. *Cf. Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264–68, 97 S.Ct. 555, 562–65, 50 L.Ed.2d 450 (1977) (holding that plaintiff need not show that challenged action was dominant purpose and including list of evidentiary factors relevant to intent determination).

■ When a selective prosecution defense is interposed, the defendant must show "intentional or purposeful discrimination" in the sense that it is not enough that a particular enforcement policy has the *effect* of singling out those who happen to be in an impermissible class; there must have been an *intent* to single out that class. For example, a decision to prosecute black gamblers but not white gamblers would clearly be impermissible, but this is not

---

7. *United States v. Peskin*, 527 F.2d 71 (7th Cir. 1975), *cert. denied*, 429 U.S. 818, 97 S.Ct. 63, 50 L.Ed.2d 79 (1976); *United States v. Picciurro*, 408 F.Supp. 1055 (E.D.Wis.1976).

also true of a decision to focus upon the numbers racket rather than poker in private clubs because of the former's ties to organized crime. Nor does this latter policy become arbitrary merely because it has the effect that most of the defendants prosecuted for gambling are black. By the same token, the mere fact that the latter policy would be legitimate does not mean that enforcement intended to discriminate against blacks can be "papered over" by this other reason.

C. Arbitrary Classification. In *Oyler v. Boles,* 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446, the Supreme Court emphasized that the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation. To prevail on an equal protection claim, a defendant must show that he was selected pursuant to an arbitrary classification, such as race or religion. It is far from clear just what constitutes an "arbitrary classification" in this context. A rather limited number of such classifications have routinely been held or assumed to be arbitrary; those include: race, national origin, gender, political activity or membership in a political party, union activity or membership in a labor union, or more generally the exercise of first amendment rights.

The classification in question cannot be viewed only in the abstract. Rather, it must be examined as it relates to legitimate law enforcement objectives. Under traditional equal protection analysis, the question which *usually* must be asked is whether there is a "rational relationship" between the classification and those objectives. (A few classifications, such as those based on race or national origin or those which restrict the exercise of fundamental constitutional rights, are subjected to a more demanding strict scrutiny-compelling interest test, while a few others, such as those based on gender, are subjected to an intermediate level of scrutiny.)

A prosecutor's enforcement classification is "arbitrary" only if people have been classified according to criteria which are clearly irrelevant to law enforcement purposes. It is clearly permissible for the government to concentrate upon gross or substantial violations of a statute or those violations which involve that part of the proscribed conduct which is most serious or of greater legitimate public concern. Illustrative of enforcement policies deemed to fit this description are the following: enforcement of gambling laws against bookmakers but not other gambling establishments or against bookmakers but not those placing bets with them, prosecuting draft evaders but not those who abet them, concentrating enforcement of certain tax laws on attorneys and accountants because of their special obligation and responsibility to the tax laws, prosecuting those who turn in their draft cards only if they also refuse induction without justification, prosecuting those who violate the law against selling securities without a license only if they have sold 10 or more securities, enforcement of the law prohibiting public officials from accepting money only against those receiving over $100, and prosecuting those who violate the statute requiring disposal of dead animals within 24 hours only if their failure extends over a longer period of time.

Some cases are more difficult, as where it is arguable that the persons selected for enforcement were chosen because of their personal characteristics rather than the nature of their conduct. It has been held, however, that selective enforcement may be justified when a striking example or a few examples are sought to deter other violators. On this basis it has been deemed permissible to proceed against the most notorious violators [8] or the most prominent persons who are violating a particular law. *United States v. Peskin,* 527 F.2d 71 (7th Cir.1975) (even if defendant were selected because of his prominence, this is permissible because it makes good sense to prosecute those who would receive media attention, as this would maximize deterrent effect).

Yet another important issue regarding the meaning of the "rational relationship"

---

**8.** *Highland Sales Corp. v. Vance,* 244 Ind. 20, 186 N.E.2d 682 (1962).

test in this context concerns the subject matter against which the classification must appear to be rational. That is, is it sufficient that the classification bear a rational relationship to a permissible governmental purpose, or must the classification be rationally related to the purposes of the criminal law *under which the defendant is charged?* More particularly, is it permissible to select out a person for prosecution under a particular law because of an unprovable belief that this person is guilty of other criminal conduct?

Consider, for example, *United States v. Sacco*, 428 F.2d 264 (9th Cir.), *cert. denied*, 400 U.S. 903, 91 S.Ct. 141, 27 L.Ed.2d 140 (1970), where the defendant objected that he was singled out, based on his suspected role in organized crime, for investigation and prosecution under the alien registration laws. That the basis of selection was not disputed, yet the court held without hesitation that it cannot be said that it is quite rational, considering the purposes underlying the alien registration statute, to focus upon those aliens suspected not to be law-abiding.

### III.

Very few cases federal cases have dismissed or reversed a criminal conviction on the basis of selective prosecution. All are pre-*Wayte*. The factual setting here is vastly different than that described by Judge Kane in *United States v. Haggerty*, 528 F.Supp. 1286, 192–95 (D.Colo.1981) (no appeal taken).

Neither is the First Amendment setting of *United States v. Steele*, 461 F.2d 1148 (9th Cir.1972) of help to these defendants. The same must be said for *United States v. Crowthers*, 456 F.2d 1074 (4th Cir.1972). *Cf. United States v. Hubbard*, 650 F.2d 293 (D.C.Cir.1980); *United States v. Catlett*, 584 F.2d 864 (8th Cir.1978); and *United States v. McCord*, 509 F.2d 334 (D.C.Cir.1974), *cert. denied*, 421 U.S. 930, 95 S.Ct. 1656, 44 L.Ed.2d 87 (1975).

The factual setting outlined by Judge (now Chief Judge) Hillman in *United States v. Nelson*, 486 F.Supp. 464, 495 (W.D.Mich.1980) is highly relevant here.

Each defendant in this case (Cyprian, Williams, Del Grosso, and Morales) has raised the issue of selective prosecution at the outset of this trial for the first time. Such was not raised under Rule 12 of the Federal Rules of Criminal Procedure. This failure alone is sufficient to foreclose further consideration of the selective prosecution issue. As above indicated, however, this court has attempted an in-depth examination of the full dimensions of that issue and has also examined the written proffers of each defendant and the briefs in support thereof. The response of the United States of America filed on January 29, 1991, on the issue of selective prosecution has also been examined.

The Indictment in this case was filed on April 10, 1990, in which 12 defendants were named in a 25–count Indictment. All defendants were not charged in all counts. Count One charges four defendants with a so-called RICO charge which has been severed for trial before the Honorable James T. Moody. (Other charges against defendants Parton and Piasecki have likewise been severed for trial there.)

Each of the four defendants now on trial is charged with violation of 18 U.S.C. § 1955 and with a conspiracy under 18 U.S.C. § 317. In addition, defendants Cyprian and Morales are charged with income tax violation under 26 U.S.C. § 7206(1). Defendant Williams is also charged with violation of 29 U.S.C. § 439(c) and 18 U.S.C. § 2(b). Defendant Cyprian is also charged with violations of 29 U.S.C. § 501(c) and 29 U.S.C. § 439(c).

Under these charges, the opening statement of the government prosecutors and proof so far, it is suggested that this prosecution goes beyond a simple bingo/gambling charge under Section 1955. The United States of America *must* prove the charges by evidence beyond a reasonable doubt, but it has said and proven enough for this court to stay any prior restraint on this ongoing prosecution. This court will not now do so and will let this case go to the jury on the evidence and proper instructions.

On the present state of the record, each defendant now on trial has failed to convince this court that an out-of-jury hearing is necessary before the case is submitted to the jury. The jury will be appropriately instructed on this subject as well as on outrageous government conduct.

These defendants will be given an opportunity to renew this issue after the jury has been instructed and deliberated. No interim hearing is necessary and none will be conducted. IT IS SO ORDERED.