William DIX, Jr., Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 89A01–9312–CR–399.

Court of Appeals of Indiana, First District.

Aug. 30, 1994.

Rehearing Denied Nov. 3, 1994.

Transfer Denied Jan. 11, 1995.

Thomas D. Margolis, Muncie, for appellant.

Pamela Carter, Atty. Gen., Julie Zandstra Frazee, Deputy Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

William Dix, Jr. appeals his convictions of professional gambling and theft, class D felonies. He received concurrent sentences of one and one-half years' imprisonment. We affirm.

On April 3, 1992, Sergeant Max Pratt of the Muncie Police Department and President of the Fraternal Order of Police (FOP) Lodge #87 learned of a bingo operation in the City of Richmond which was being advertised as a fundraiser for the Muncie FOP. As an executive officer of the Muncie FOP, Pratt knew that use of the Muncie FOP bingo permit had not been authorized by the FOP's board, and that traditionally, local FOPs had observed the custom of holding fundraisers only in their own areas. Pratt notified Lieutenant Mark Smith of the Richmond Police Department of his intent to investigate the operation and proceeded to Richmond where he located the game.

When Sergeant Pratt arrived, 20–30 people were playing bingo. Sergeant Pratt met with the manager of the operation, an individual who represented himself to be Luther Ogletree, in a back room of the establishment. Defendant Dix was seated to the right, counting money. Sergeant Pratt told the individuals in the back room that they did not have the Muncie FOP's authority to use its permit, which had expired December 31, 1991, and removed a photocopy of the permit from the wall. Sergeant Pratt left with the photocopy of the expired permit and reported to Lt. Smith that he had taken the Muncie FOP's permit.

Lt. Smith, who was then in charge of special investigations and a member of the Richmond drug task force, decided to go to the establishment to determine whether the operation had any other permits. When he arrived, 200–250 people were playing bingo and other games of chance. When the operators of the games could not produce a valid permit, Lt. Smith shut the games down. Shortly thereafter, Dix was arrested.

Dix alleges in this appeal that:

(1) he was selectively prosecuted;

(2) prosecutorial misconduct deprived him of a fair trial;

(3) the trial court erroneously refused his tendered instruction by which he sought to define the term "control;"

(4) the evidence is insufficient to sustain his convictions of professional gambling and theft; and,

(5) the trial court committed reversible error in the denial of his post-trial petition for post-conviction relief.

## I.

■ Dix argues the trial court erroneously denied his motion to dismiss in which he alleged that the State of Indiana had engaged in selective prosecution in violation of the Equal Protection Clause of the United States Constitution. Dix relied upon parts of the discovery deposition of Lieutenant Mark A. Smith, a police officer with the City of Richmond, to substantiate his claim. The State responded in writing to the motion but oral argument was not held. The trial court denied Dix's motion without a hearing following the pretrial conference.

■ A selective prosecution claim is judged according to traditional equal protection standards. *Wayte v. United States* (1985), 470 U.S. 598, 608, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547. These standards require Dix to show that the State's gambling enforcement policy "had a discriminatory effect and was motivated by a discriminatory purpose." *Id.* When the selection of the defendant for prosecution is not shown to be deliberately based upon an unjustifiable standard such as race, national origin, or religion, or undertaken in an effort to restrict the exercise of fundamental constitutional rights, the conscious exercise of some selectivity within the limits set by the legislature through the constitutionally valid definition of chargeable offenses is not in and of itself a federal constitutional violation. *Bordenkircher v. Hayes* (1978), 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604; *Oyler v. Boles* (1962), 368 U.S. 448, 456, 82 S.Ct. 501, 505, 7 L.Ed.2d 446.

■ The lower federal and state courts have read the Supreme Court cases to require proof of three elements by a selective prosecution claimant: (1) that other violators similarly situated are generally not prosecuted; (2) that the selection of the claimant for prosecution was intentional and purposeful; and, (3) that the selection of the claimant was pursuant to an arbitrary classification. *See e.g. Pruitt v. State* (1990), Ind.App., 557 N.E.2d 684, 689, *trans. denied; United States v. Cyprian* (N.D.Ind., 1991), 756 F.Supp. 388, 391. The selective prosecution claimant must set out in a written pretrial motion facts sufficient to demonstrate a prima facie claim. The failure to allege facts to support each element of the claim subjects the motion to a summary dismissal, *Pruitt,* 557 N.E.2d 684; *Albright v. State* (1986), Ind.App., 501 N.E.2d 488, because grounds to support a finding of selective prosecution are lacking. *Oyler,* 368 U.S. at 456, 82 S.Ct. at 505.

Although Dix argues in his brief that certain persons associated with the Richmond Plaza bingo operation were prosecuted because of their non-caucasian races, Dix made no allegation in his motion and offered no evidence tending to establish that he was a member of a cognizable class of such persons, that the State had purposefully prosecuted him because of his race, or even that the State's enforcement behavior had had the discriminatory effect of singling out members of his race. The record tells us only that Dix is not a Caucasian. By failing to allege and prove that he was intentionally and purposefully prosecuted because of his race or some other arbitrary classification, Dix has not met his prima facie burden of proof.

Dix's evidence is also inconclusive as to whether or not other professional gamblers were being prosecuted and discloses nothing about the nature of these purported gamblers' criminal activities such that a court could discern these violators to be similarly situated. During Lt. Smith's deposition, Dix's attorney did inquire about a number of establishments which he implied were operating illegally. The deposition questions and answers reflect that some of these establishments were under investigation by the Indiana State Police in cooperation with the Richmond Police Department, while others were being investigated solely by the Richmond Police. Lt. Smith declined to say whether charges had been initiated or would be forthcoming as a consequence of these investigations, only that the investigations

were continuing. No other evidence was offered.

Under traditional equal protection analysis, if a claimant cannot bring himself within a suspect classification, the State need only show that its enforcement criteria are rationally related to legitimate law enforcement objectives. *United States v. Cyprian* (N.D.Ind., 1991), 756 F.Supp. 388, 394. One such permissible objective is for the government to concentrate upon gross or substantial violations of statute or those violations which are more serious or of legitimate public concern as a means of deterring others. *Id.*

The evidence offered at trial showed Dix to be one of the individuals who exercised some degree of operational control over the enterprise. He collected money, kept the books, and paid the employees. Dix's involvement can be characterized as more serious than that of the callers or of the players, who may have genuinely and reasonably believed the operation to be benefiting a charitable organization, and thus, his prosecution could be believed to rationally further the legitimate goal of deterrence.

Dix has not shown a violation of the Equal Protection Clause. The trial court properly denied his claim without a hearing.

## II.

Dix argues that the prosecuting attorney engaged in misconduct. The specifics of his argument are, for the most part, incomprehensible, but the argument does contain these themes: (1) that the prosecutor concealed or failed to disclose during discovery a conflict between the affidavit for probable cause executed by Lt. Smith in this case and an affidavit in another gambling prosecution case, and concealed or failed to disclose charges against an individual with the same name as one of the State's witnesses, Perry Munson, who had been granted immunity from prosecution for his involvement in the Richmond Plaza Bingo operation; and, (2) that the prosecutor knowingly used the perjured testimony of Lt. Smith and Perry Munson.

The record contains the affidavits in question. There is a discrepancy between the affidavits as to whether Sergeant Pratt of the Muncie Police Department and Muncie FOP told the affiant, Lt. Smith, that he had removed the original Muncie FOP 87 bingo permit or simply a photocopy of that permit from the site of the Richmond Plaza bingo operation. When Lt. Smith arrived at the establishment after Sergeant Pratt had taken back the photocopy of the Muncie FOP bingo permit, the operation had no permit.

Be that as it may, the record reflects that the State filed a comprehensive response to Dix's request for discovery. In it, the prosecutor named both Lt. Smith and Perry Munson as witnesses, stated his intent to introduce the search warrant affidavit into evidence, attached copies of the criminal records of the defendant and any witnesses listed, and stated that police reports and other investigative reports were available for inspection for any exculpatory material they may contain. Dix has not offered any evidence that the affidavits in question were unavailable or that the criminal history of Perry Munson had not been attached. Plainly, the affidavits were a part of the court's file, if not the prosecutor's, and Lt. Smith was available for questioning about the affidavits, both before and at trial. In fact, Dix named Lt. Mark Smith as one of his witnesses; hence, Dix could have discovered any potential conflicts between the officer's sworn statements and his trial testimony when he deposed Lt. Smith. He has not shown bad faith or a flagrant refusal to comply with discovery requirements.

Likewise, Dix has not shown that the testimony of either Lt. Smith or Perry Munson was perjured. Contradictory or inconsistent testimony by a witness does not constitute perjury. *Evans v. State* (1986), Ind., 489 N.E.2d 942, 948. Conflicts between Perry Munson's uncorroborated testimony and that of the defense's witnesses were for the jury to reconcile. *Id.*

Dix surmises that the prosecutor obtained the dismissal of gambling charges filed against Perry Munson in May, 1989, in Franklin County in exchange for Munson's testimony and failed to disclose this arrange-

ment to the jury. His proof of this charge consists of a photocopy of a Franklin County docket sheet which shows Promoting Professional Gambling charges against a Perry M. Munson dismissed on July 6, 1992. Dix offered no other evidence tending to prove that the witness, Perry Munson, was the same individual charged in Franklin County and did not ask Munson about the charges when he testified at trial. Moreover, Dix offered no proof and only supposition that the prosecutor had either obtained the dismissal of the charges or knew about their existence. In the absence of such proof, it is impossible to conclude that the prosecutor in fact engaged in misconduct. We need not therefore determine whether Dix was improperly subjected to grave peril. *See Schlomer v. State* (1991), Ind., 580 N.E.2d 950, 956.

### III.

■ Dix sought an instruction which would define the term "control" in the language of Black's Law Dictionary as the "power or authority to manage, direct, supervise, restrict, or regulate, direct, govern, administer or oversee." On the record, Dix stated that the instruction was appropriate because "the particular and peculiar facts of this matter indicate" so. The trial court instructed the jury in the language of the definitional statute that "[t]he term 'exert control over property' is defined by law as meaning to obtain, take, carry, drive, lead away, conceal, abandon, sell, convey, encumber, or possess property, or to secure, transfer, or extend a right to property." Dix argues on appeal that there was evidence warranting an instruction on his theory of the case, namely that Luther Ogletree was in charge and that he (Dix) was simply an unpaid volunteer.

■ Indiana Code 35–37–2–2 requires the court, in charging the jury, to instruct on all matters of law necessary for the jury's information in reaching its verdict. In addition, a defendant is entitled to instructions which are properly tendered on any theory of defense which has some foundation in the evidence. *Wilson v. State* (1978), 268 Ind. 112, 117, 374 N.E.2d 45, 48. However, when the substance of a tendered instruction is

covered by other instructions given by the trial court, refusal of the tendered instruction is not grounds for reversal. *Id.; Schweitzer v. State* (1990), Ind., 552 N.E.2d 454, 457.

The court's instruction properly defined the statutory element "exerting unauthorized control" as the General Assembly intended the term to be defined. Hence, the subject matter of control was covered by another instruction which correctly stated the law and the court was not required to give Dix's definition as contained in his tendered instruction.

### IV.

■ Dix was convicted of professional gambling, as proscribed by I.C. 35–45–5–3(6), and theft, as proscribed by I.C. 35–43–4–2(a). He maintains the evidence is insufficient to support his conviction of either offense.

Indiana Code 35–45–5–3(6) provides that a person who knowingly or intentionally accepts, or offers to accept, for profit, money risked in gambling, commits professional gambling. "Gambling" means risking money or other property for gain, contingent in whole or in part upon lot, chance, or the operation of a gambling device; but it does not include participation in bona fide contests of skill, speed, strength, or endurance in which awards are made only to entrants or the owners of entries; or bona fide business transactions that are valid under the law of contracts. I.C. 35–45–5–1.

■ The crime of theft occurs when a person knowingly or intentionally exerts unauthorized control over the property of another with the intent to deprive that person of any part of its value or use. I.C. 35–43–4–2. A person's control over property of another is "unauthorized" if it is exerted in a manner or to an extent other than that to which the other person has consented; if it is exerted by creating or confirming a false impression in the other person; or if it is exerted by promising performance that the person knows will not be performed. I.C. 35–43–4–1(b)(2), (4), & (6).

■ Under Indiana law, an active participant in the crimes of professional gambling or theft can be charged as a principal yet

convicted as an accomplice in the crime; there is no distinction between the responsibility of a principal and an accomplice. *See Whittle v. State* (1989), Ind., 542 N.E.2d 981, 991. Hence, the evidence will be sufficient to sustain the jury's verdict if it shows Dix to be at least an accomplice. *See Taylor v. State* (1986), Ind., 495 N.E.2d 710, 713.

The evidence most favorable to the verdict shows that Dix collected and counted money, paid employees in cash, and kept the books of the Richmond Plaza bingo operation. The bingo enterprise operated under the pretense that at least some of the proceeds of money risked to play bingo, buy tip boards or pull tabs and play electronic slot machines was going to the Muncie FOP or Elks International. The operators of the enterprise ran ads in the Richmond area newspapers which stated that the games of chance were being operated for the benefit of the Muncie FOP and a sign at the establishment directed players to make their checks payable to Elks International. Neither Elks International nor the Muncie FOP had a valid permit issued by the Indiana Secretary of State for the operation of a charitable bingo game and on the occasion in question, the Richmond Plaza bingo operators were unable to produce any other valid permit. Perry Munson, a caller, testified that he was paid cash for his services at the end of the evening on the nights he called, often by Dix, and that he and everyone else knew that the operation was illegal. If Munson, a caller, knew that the games of chance were being operated for profit, a jury could reasonably infer that Dix, who was involved in the bookkeeping, also knew that no charitable operations were involved.

The operators of the enterprise obtained possession of the participants' money by creating the false impression that the opportunity to play bingo and other games of chance was being offered for charitable purposes, when, in fact, no recognized charity was obtaining a share of the profit. When patrons relinquished control over their money, and Dix accepted the money risked to play bingo and the other games on behalf of the enterprise, Dix exerted control over the patrons' money to an extent other than that to which they had consented and by promising a performance, the payment of a share of the proceeds to certain charitable organizations, that Dix and his affiliates knew would not be performed.

Dix's acts enabled the operators of the enterprise to accept money risked in gambling for profit, and he may be convicted as a principal whether or not he committed every element of the crime of professional gambling himself. Likewise, whether or not he personally exerted unauthorized control over each participant's money, the control exerted by his colleagues was shown to be unauthorized and he and his cohorts intended to deprive the persons who played the games of chance offered by Richmond Plaza Bingo of that portion of the value of their money which they perceived would be given to the Muncie FOP or Elks International.

Dix makes the argument in his brief that the provisions of I.C. 4–32–3–1 govern his conduct. However, the offense committed by Dix occurred before Article 32 had been amended in 1992. By its terms, Article 32 applied only to games of chance conducted by an organization which was primarily religious, charitable, fraternal, educational, civic, political, or patriotic in nature; was a not-for-profit organization exempt from taxation under Section 501 of the Internal Revenue Code or two named sections of the Indiana Code; and had been in existence for at least five (5) years. Dix offered no evidence tending to prove that he was exempt from prosecution by reason of Article 32. The State's proof, at a minimum, established that the Richmond Plaza Bingo "organization" had been in operation only since August or September of 1990, and was not affiliated with either the Elks International or the Muncie FOP 87 as it had claimed.

### V.

Dix's final contention is that the trial court erred in failing to grant him the relief requested in his post-conviction petition. We do not find a post-conviction petition in the record. Presumably, Dix has argued all of the allegations of error made in his motion to correct error which he intends to raise in this appeal. If his claim is that he is entitled to

relief because of the discovery of new evidence, he should have set forth the test for relief and cogently applied it. Ind.Appellate Rule 8.3(A)(7). He has not done so.

Judgment affirmed.

BAKER and NAJAM, JJ., concur.