**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 17 2014, 7:09 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JAMES A. SHOAF**
Columbus, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JAMES CHRISTIAN WARNER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 03A01-1305-CR-212 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE BARTHOLOMEW CIRCUIT COURT
The Honorable Stephen R. Heimann, Judge
Cause No. 03C01-1210-FC-5410

**February 17, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

James Christian Warner ("Warner") appeals from his conviction after a jury trial of attempted inmate fraud[1] as a Class C felony, contending that there is insufficient evidence to support his conviction.

We affirm.

**FACTS AND PROCEDURAL HISTORY**

Warner wrote a letter to Ruby Dilk ("Ruby") and a letter to Priscilla Young ("Priscilla") from the Bartholomew County Jail where Warner was an inmate. Warner addressed the letters to the Asbury United Methodist Church, of which both women were members, and where the services for their recently deceased husbands were being prepared.

In Warner's letter to Ruby, postmarked September 14, 2012, he acknowledged the death of her husband, Raymond, and claimed that Raymond owed Warner $200.00 for work that he had performed for Raymond. Warner asked Ruby to send a money order to him in jail for that amount. Raymond had not known Warner, had never seen him before, nor had Warner ever done work for Raymond. Raymond, who was eighty-nine years old and legally blind prior to his death on September 11, 2012, had not worked for five years. All of the work that was completed at Raymond and Ruby's house was done by one particular handyman, who was not Warner. Raymond's obituary, which appeared in The Republic newspaper on September 13, 2012, gave the name and address of both Ruby and the Asbury United Methodist Church.

---

[1] *See* Ind. Code § 35-43-5-20 (inmate fraud); Ind. Code § 35-41-5-1 (attempt).

Three days later, in a letter to Priscilla, postmarked September 17, 2012, Warner acknowledged the death of Priscilla's husband, Jack, who had passed away on September 15, 2012. Warner represented in the letter that Jack had been his chemistry teacher. Warner further described Jack as a good friend who had never let Warner down. Warner told Priscilla that his girlfriend was upset because she could not afford to send him a money order to buy long underwear to fend off the cold. Warner claimed not to have enough money to write a letter to his girlfriend, but explained that a roommate had given him a stamp to write to Priscilla.

Warner had not been one of Jack's chemistry students, had attended a different high school, and had never taken chemistry classes from Jack. Priscilla did not know Warner, and to her knowledge, since Priscilla knew all of Jack's friends, Jack did not know Warner. After Priscilla read the letter, she felt as if Warner wanted her to send him money in jail because of his reference to a money order. Jack's obituary appeared in The Republic on September 16, 2012, and specifically stated that Jack had been a chemistry teacher at Columbus East High School, gave Priscilla's name, and the name of Asbury United Methodist Church.

Once the letters were received at Asbury United Methodist Church, they were opened by Paul Johnson ("Johnson"), who was employed in administration at the church. Johnson, who was in the process of planning the services of the two men, opened the letters because he did not want to concern or trouble the widows of the two men. Johnson thought that it was unusual that the letters to the two women were from the same inmate, that Ruby's requested money outright, and that Priscilla's indirectly requested that support be

3

provided to him by her. The timing of the receipt of the letters also concerned Johnson since they were received within four days of each other, and within a day after the appearance of the obituary in the newspaper. Johnson contacted Detective Tom Foust ("Detective Foust"), with the Columbus Police Department.

Detective Foust gave the letters to Detective Kevin Abner ("Detective Abner"), who was employed with the Bartholomew County Sheriff's Office. After reading the letters from Warner, Detective Abner believed that Warner was seeking money from the women. In the course of his investigation, Detective Abner obtained Warner's school and college records, confirming that Warner was never a student of Jack's. Detective Abner went to the Bartholomew County Jail to interview Warner about the letters. Warner admitted to Detective Abner that he had written the letters, but refused to explain his claimed connection to Raymond and Jack. Detective Abner confirmed with Warner, and Warner admitted, that inmates at the jail received The Republic newspaper and that Warner read the obituaries in particular.

The State charged Warner with two counts of inmate fraud. The jury found Warner guilty of committing inmate fraud as to Ruby and attempted inmate fraud as to Priscilla. The trial court sentenced Warner to two eight-year executed sentences to be served concurrently. Warner now appeals his conviction for attempted inmate fraud.

**DISCUSSION AND DECISION**

Warner appeals challenging the sufficiency of the evidence supporting his conviction. Our standard of review for sufficiency claims is well settled. When we review a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the

4

credibility of the witnesses. *Parahams v. State*, 908 N.E.2d 689, 691 (Ind. Ct. App. 2009) (citing *Jones v. State*, 783 N.E.2d 1132, 1139 (Ind. 2003)). We look only to the probative evidence supporting the judgment and the reasonable inferences therein to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. *Id*. If there is substantial evidence of probative value to support the conviction, it will not be set aside. *Id*. It is the function of the trier of fact to resolve conflicts of testimony and to determine the weight of the evidence and the credibility of the witnesses. *Yowler v. State*, 894 N.E.2d 1000, 1002 (Ind. Ct. App. 2008).

In order to establish that Warner committed the crime of attempted inmate fraud of Priscilla, the State was required to prove beyond a reasonable doubt that Warner, who was confined in a county jail, and with the intent to obtain money or other property from a person who is not an inmate, knowingly or intentionally makes a misrepresentation to one who is not an inmate and obtains or attempts to obtain money or other property from the person who is not an inmate. Ind. Code § 35-43-5-20. Warner contends that because he did not make a direct request for money, there was reasonable doubt that he knowingly or intentionally committed the offense against Priscilla.

Although Warner did not make a direct solicitation of money from Priscilla, the content of the letter was such that a jury could infer that Warner intended to solicit money from her. Warner lied to Priscilla, who was recently widowed, about being a student of Jack's and a "true friend" of his. *Appellant's App*. at 42. Warner had not known Jack and had not been his student. Warner wrote about how upset his girlfriend was that she did not have the means to send a money order to Warner so that he could buy long underwear. In

5

that seven-sentence letter, Warner also stated that he could not afford to write to his girlfriend, but wrote to Priscilla with the help of a fellow inmate who had supplied him with the necessary postage. Priscilla testified that, after reading the letter, she felt like Warner wanted her to send him money in jail. Johnson and Detective Faust testified that they believed Warner sought money from both women. Additionally, when Detective Faust questioned Warner in jail, Warner refused to explain how he knew Raymond or Jack. The jury was entitled to discount Warner's testimony at trial in which he attempted to explain his intent and describe how he knew the two men. "We are also mindful that the jury is the trier of fact and is entitled to determine which version of the incident to credit." *Duren v. State*, 720 N.E.2d 1198, 1201 (Ind. Ct. App. 1999) (citing *Barton v. State*, 490 N.E.2d 317, 318 (Ind. 1986)).

"We will affirm if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt." *Gonzalez v. State*, 908 N.E.2d 338, 340 (Ind. Ct. App. 2009) (citing *Pelley v. State*, 901 N.E.2d 494, 500 (Ind. 2009)). "Circumstantial evidence alone may support a conviction if inferences may reasonably be drawn that allowed the factfinder to find the defendant guilty beyond a reasonable doubt." *Id*. The inferences here are sufficient to support Warner's conviction for attempted inmate fraud.

We likewise reject Warner's claim that the jury verdicts in this case are inconsistent or that an inconsistent-verdict argument can be used to support his claim of insufficient evidence. "The evaluation of whether a conviction is supported by sufficient evidence is independent from and irrelevant to the assessment of whether two verdicts are

6

contradictory and irreconcilable." *Beattie v. State*, 924 N.E.2d 643, 648 (Ind. 2010). Not only is *Beattie* inapplicable to Warner's claim, even if it were, the jury's verdicts were not inconsistent or irreconcilable. Warner was charged with two separate offenses against two different women and was found guilty of both offenses. There is nothing inconsistent in the jury's decision to find Warner guilty of attempting the commission of the offense against one victim, and guilty of the actual offense against the other.

Warner suggests that the trial court committed an instructional error in the instructions given to the jury regarding attempted inmate fraud. This issue has been waived because Warner failed to preserve the issue for review at trial and has failed to present cogent argument on appeal. Nonetheless, we find no error here. The State correctly observes that the statute defining the offense of inmate fraud does not require that a direct solicitation of money be made in order to have committed the offense. Rather, there must be knowing or intentional misrepresentations made in order to obtain or attempt to obtain money or other property. The jurors used the evidence of Warner's direct solicitation of money from Ruby and the inference that Warner was seeking money from Priscilla to arrive at the two different guilty verdicts. The jury could have found Warner guilty of two counts of actual inmate fraud. Warner has failed to establish reversible error on the basis of insufficient evidence.

Affirmed.

FRIEDLANDER, J., and BAILEY, J., concur.