## Harry HART, Appellant–Defendant,

v.

## STATE of Indiana, Appellee–Plaintiff.

No. 11A04–9505–CR–155.

Court of Appeals of Indiana.

Aug. 20, 1996.

using a deadly weapon, a class B felony;[2] and Theft, a class D felony.[3]

We affirm.

## ISSUES

Hart raises six issues for our review, which we consolidate and restate as:

1. Whether the trial court's jury instructions were erroneous and misleading.

2. Whether the evidence was sufficient to avoid a directed verdict and support the convictions.

3. Whether the trial court properly excluded evidence of disciplinary action against the State's chief witness.

4. Whether the trial court erred in allowing the State to amend the information after the parties had rested.

5. Whether convictions for Intimidation with a Deadly Weapon and Escape with a Deadly Weapon violated Double Jeopardy.

## FACTS AND PROCEDURAL HISTORY

The facts most favorable to the judgment are that at approximately 4:50 p.m. on March 11, 1994, Deborah Morgan observed a black pick-up truck driving erratically near Clay City, Indiana. Morgan saw the truck cross the center line numerous times and nearly run another truck off the road. Morgan used a citizens band radio in her car to call the police and request that the truck be stopped. She then followed the truck as it passed through the Clay City town limits.

Clay City Deputy Town Marshal Daniel Wheeler responded to Morgan's call and began following the truck outside the town limits. As Wheeler approached the truck, he observed the truck cross the center line. He also observed that the truck was traveling approximately thirty miles per hour in a fifty-five mile per hour zone. Wheeler then activated his lights and initiated a traffic stop. The driver of the truck made a right turn onto a county road and stopped the truck without incident.

---

William G. Brown, Brown & Somheil, Brazil, for Appellant–Defendant.

Pamela Carter, Attorney General, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Defendant–Appellant Harry Hart appeals his convictions of Intimidation with a deadly weapon, a class C felony;[1] Escape while

1. Ind.Code 35–45–2–1.

2. Ind.Code 35–44–3–5.

3. Ind.Code 35–43–4–2.

The driver of the truck, later identified as Hart, immediately exited the truck. Wheeler asked him to perform three field sobriety tests. He passed only one of the tests, and Wheeler asked him to submit to a urine analysis to determine whether he was driving under the influence of a controlled substance. Initially, Hart agreed.

Wheeler asked Hart to remove a knife that he was wearing, which Hart then placed in the truck. Wheeler then asked Hart if he had anything else he needed to leave in the truck, and Hart reached in his shirt pocket and removed a set of brass knuckles. Wheeler then asked Hart if he had any other weapons. Hart responded that he did and lifted up his vest, which revealed a nine millimeter semi-automatic handgun. Hart assisted Wheeler in disarming the handgun.

Wheeler ordered Hart to place his hands on the police car so that he could secure him for transportation to a local hospital for the urine analysis. Wheeler reached into the police car for his handcuffs, and when he looked up, Hart was pointing a gun at him. Hart said something to the effect that "it was not going to happen this time," and Wheeler began to retreat around the car. (R. 339). Wheeler retreated to a ditch, then ran a safe distance away. As Wheeler leaped into the ditch, Hart said, "Just keep going, Dan." (R. 342). After a few minutes, Hart removed the keys from the police car, and sped off in the truck.

Wheeler called for backup from a nearby house. Officers from the Clay County Sheriff's Department and the Indiana State Police responded and began searching the area for Hart. Later the officers, joined by an Owen County Deputy Sheriff, approached Hart's house in Owen County. Hart was not home, but the truck was parked in the backyard. Hart had left the county and was "runnin' and hidin' for the most part." (R. 629). He subsequently surrendered to the police.

The State charged Hart with Escape while using a deadly weapon, a class B felony; Intimidation with a deadly weapon, a class C felony; Theft, a class D felony; Resisting Law Enforcement, a class D felony; Carrying a Handgun Without a License, a class A misdemeanor; and Operating a Vehicle While Intoxicated, a class A misdemeanor. A jury found Hart guilty of the first three charges, and Hart now appeals.

## DISCUSSION AND DECISION

### I. JURY INSTRUCTIONS

■ Hart contends that the trial court erred in giving its instruction on "lawful detention" and in rejecting Hart's tendered instruction on the same subject. He further contends that the instruction given by the court misled the jury.

■ The matter of giving or refusing jury instructions is within the trial court's discretion, and this court will reverse only upon a showing of abuse of that discretion. *Nichols v. State*, 591 N.E.2d 134, 139 (Ind. 1992). An abuse of discretion will be found only where the individual instruction is erroneous or where the instructions, taken as a whole, misstate the law or otherwise mislead the jury. *Reaves v. State*, 586 N.E.2d 847, 855 (Ind.1992). When reviewing the refusal to give a tendered instruction, this court determines whether (1) the tendered instruction correctly states the law, (2) there was evidence in the record to support the giving of the instruction, and (3) the substance of the tendered instruction is covered by other instructions. *Griffin v. State*, 644 N.E.2d 561, 562 (Ind.1994).

Ind.Code 35–41–1–18 gives a long list of definitions of "lawful detention." Included in the definition is the phrase "any other detention for law enforcement purposes." Hart tendered an instruction which consisted of a verbatim statement of the statute.[4] The

---

4. Ind.Code 35–41–1–18 states:
"Lawful detention" means arrest, custody following surrender in lieu of arrest, detention in a penal facility, detention in a facility for custody of persons alleged or found to be delinquent children, detention under a law authorizing civil commitment in lieu of criminal proceedings or authorizing such detention while crimi-

nal proceedings are held in abeyance, detention for extradition or deportation, or custody for purposes incident to any of the above including transportation, medical diagnosis or treatment, court appearances, work, or recreation, or any other detention for law enforcement purposes; but it does not include supervision of a person on probation or parole or

court's instruction stated that "[t]he term 'lawful detention' is defined by law as including detaining any person for lawful enforcement purposes." (R. 128). The instruction was given on the basis that no arrest had occurred.

Both Hart's tendered instruction and the trial court's instruction were an accurate statement of the statute. However, Hart's tendered instruction contained much irrelevant information which would have confused and misled the jury. The instruction given by the trial court contained only the relevant information necessary to assist the jury in arriving at an informed verdict. Because the trial court's instruction was an accurate statement of the relevant portion of the statute, the court did not abuse its discretion in giving it over Hart's proposed instruction.

■ Hart also contends that the trial court's instruction on the parameters of Wheeler's authority was erroneous because it failed to note limits established by Clay City. The instruction stated in pertinent part that "[t]he law in Indiana permits a law enforcement officer of a town to lawfully detain any individual the law enforcement officer believes in good faith has committed a criminal offense or infraction without any territorial limits, with the exception that it must occur in the State of Indiana. . . ." (R. 123).

At trial, Hart introduced a Town of Clay City document entitled "General Description of Duties of the Town Marshal and Deputy Town Marshal, In Addition to Requirements Mandated by Indiana Code 36–5–7–1 through 36–5–7–6." The document stated that the Deputy Town Marshal's "activity is *PRIMARILY RESTRICTED TO THE TOWN LIMITS, an* exception is made in those instances when the Town Marshal or Deputy Town Marshal is aiding other law enforcement agencies or is in hot pursuit of someone engaged in *SERIOUS CRIMINAL ACTIVITIES* or in an emergency situation." (R. 370). (emphasis in original). Hart argues that because the detention took place outside the town limits, it was done in violation of the limitations placed upon Wheeler. Thus, he

constraint incidental to release with or without

concludes that the detention was not a "lawful" detention.

A Town Marshal is a law enforcement officer. Ind.Code 35–41–1–17. He or she has the powers of other law enforcement officers in executing the orders of the legislative body and enforcing laws. Ind.Code 36–5–7–4. A Deputy Marshal has the same powers as the Town Marshal. Ind.Code 36–5–7–6. Our courts have held that a Town Marshal's power to arrest and detain a citizen is not limited to the geographic boundaries of his town, but is statewide. *See Spranger v. State,* 498 N.E.2d 931, 942–43 (Ind.1986), *cert. denied,* 481 U.S. 1033, 107 S.Ct. 1965, 95 L.Ed.2d 536 (1987); *State v. Russ,* 480 N.E.2d 248, 250–51 (Ind.Ct.App. 1985), *reh'g. denied, trans. denied.*

As a practical matter, the Town of Clay City wanted to limit the Deputy Town Marshal's activities outside the town limits. In other words, even though the town recognized that the Deputy Town Marshal had the power to make arrests anywhere in the State, it desired that he spend his time doing what the town paid him to do, i.e. "to insure the security and protection of the citizens of Clay City." (R. 370). The limitations placed upon a Deputy Town Marshal by the Town of Clay City were not meant to, and did not, render detentions outside the town limits unlawful. Therefore, while Wheeler's detention of Hart outside the town limits may or may not have been in violation of the practical terms of his employment, it was certainly not unlawful. The instruction given by the trial court correctly stated the law. Furthermore, it did not mislead the jury. Accordingly, the trial court did not abuse its discretion in giving the instruction

■ Hart also contends that the trial court erred in refusing to give his tendered instructions on the definition of "arrest." The trial court did not err in refusing to give the instructions as the evidence did not support the giving of such instructions. The Escape charge, and subsequent conviction, were not based upon escape from an arrest; they were based upon escape from "lawful detention." This lawful detention was instituted for the

bail.

lawful purpose of facilitating a urine analysis. The tendered instructions defining arrest were irrelevant.

## II. DIRECTED VERDICT AND SUFFICIENCY OF THE EVIDENCE

Hart contends that the trial court erred in refusing to grant his motion for directed verdict as to the Escape and Theft charges. Hart further contends that the evidence was insufficient to support his Theft conviction.

In order for a trial court to grant a motion for directed verdict, there must be a total lack of evidence on an essential element of the crime or the evidence must be without conflict and susceptible to only an inference in favor of the defendant's innocence. *Barrett v. State*, 634 N.E.2d 835, 837 (Ind.Ct.App.1994). If the evidence is sufficient to sustain a conviction on appeal, then the denial of a motion for a directed verdict cannot be error. *Id.* When reviewing a claim of insufficient evidence, this court will neither reweigh the evidence nor judge the credibility of the witnesses. *Smith v. State*, 660 N.E.2d 357, 358 (Ind.Ct.App.1996). Rather, we will examine only the evidence most favorable to the State, along with all reasonable inferences to be drawn therefrom, and if there is substantial evidence of probative value to sustain the conviction, it will not be set aside. *Id.* Reversal is only appropriate when reasonable persons would be unable to form inferences as to each material element of the offense. *Groves v. State*, 479 N.E.2d 626, 629 (Ind.Ct.App.1985).

The offense of Escape occurs when a person "intentionally flees from lawful detention." Ind.Code 35–44–3–5. The offense is a class B felony if the person "draws or uses a deadly weapon." *Id.*

Hart first argues that he was not in lawful detention at the time he pointed the gun at Wheeler and made his unauthorized exit. He relies on the argument he made in Issue I pertaining to Wheeler's contract with Clay City. As noted in our discussion of Issue I, the detention was lawful.

Hart also argues that the statute requires a showing that he used a deadly weapon while in the process of fleeing. He refers to the statutory provision that Escape becomes a class B felony only when the deadly weapon is used "while committing [the escape]." He reasons that because Wheeler was the one doing the fleeing at the time he pulled the gun, he cannot be guilty of Escape as a class B felony. He cites *Isom v. State*, 479 N.E.2d 61 (Ind.Ct.App.1985), *overruled on other grounds*, 554 N.E.2d 1127 (Ind.1990), in support of his argument.

*Isom* does use the phrase "in the process of fleeing" in its analysis of the statute as a synonym for the phrase "while committing [the escape]" used in the statute. The phrase used in *Isom* is an accurate synonym; however, it does not exonerate Hart. Hart's pointing of the gun at Wheeler was the first step toward his escape; as such, it was the first step in the "process" of fleeing.

The record shows that Wheeler detained Hart for law enforcement purposes, i.e., to require Hart to submit to a urine analysis to determine whether Hart had been driving under the influence of a controlled substance. Rather than go with Wheeler, Hart drew a weapon and pointed it at Wheeler, forcing him to take cover in a ditch. Hart then sped away in his truck, and hid from police for a unspecified amount of time. The evidence is sufficient to show that Hart fled from lawful detention by use of a deadly weapon. The trial court did not err in refusing to grant Hart's motion for a directed verdict as to the offense of Escape.

The offense of Theft occurs when a person "knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use." Ind. Code 35–43–4–2(a). Hart argues that he did not commit the offense because he did not have the intent to deprive Clay City of the use of the car keys. He argues that the lack of intent is evidenced by a call to the Town Board Attorney shortly after the incident to inform him as to the location of the keys.

Intent may be inferred from a defendant's conduct and the natural and usual sequence to which such conduct logically and reasonably points. *Greenlee v. State*, 655 N.E.2d 488, 492 (Ind.1995). The jury is enti-

tled to infer intent from the surrounding circumstances. *Brown v. State,* 659 N.E.2d 652, 657–58 (Ind.Ct.App.1995), *trans. denied.*

At trial, Hart conceded that he exerted unauthorized control over the keys belonging to Clay City. Despite Hart's protestations to the contrary, the jury could have reasonably believed that when he exerted unauthorized control over the keys, he did so with the intent to prevent Wheeler, a Clay City employee, from using the keys. Specifically, the jury could have inferred that Hart intended to deprive Wheeler of the use of the police car to chase Hart. Hart's later relinquishment of control of the keys does not negate the prior intentional deprivation of use.

The trial court did not err in denying Hart's motion for directed verdict as to the Theft charge. Furthermore, the conviction for Theft is supported by sufficient evidence.

## III. EXCLUSION OF EVIDENCE

■ Hart contends that the trial court erred in excluding evidence "of any action or termination of Deputy Marshal Dan Wheeler." Appellant's Brief at 42. In his appellate brief, Hart states that he made an offer of proof of such evidence; however, he did not provide a cite to the record or list the offer in the table of contents to the record.

■ An offer of proof is the method by which the proponent of evidence preserves any error in its exclusion. *Tyson v. State,* 619 N.E.2d 276, 281 (Ind.Ct.App.1993), *trans. denied, cert. denied,* 510 U.S. 1176, 114 S.Ct. 1216, 127 L.Ed.2d 562 (1994). "When the proponent does not make an offer of proof, he has not adequately preserved the exclusion of [the] witness' testimony as an issue for appellate review." *Id.* (quoting *Wiseheart v. State,* 491 N.E.2d 985, 991 (Ind.1986) (citation omitted)). The absence of an offer of proof in the present case results in waiver of the issue.

## IV. AMENDED INFORMATION

■ Hart contends that the trial court erred in allowing the State to amend the information after the parties had rested. He argues that the amendment caused prejudice to him because it did not allow him to raise an appropriate defense.

■ Amendment of an information is governed by Ind.Code 35–34–1–5(c), which states:

> Upon motion of the prosecuting attorney, the court may, at any time before, during, or after the trial, permit an amendment to the indictment or information in respect to any defect, imperfection, or omission in form which does not prejudice the substantial rights of the defendant.

An information may not be amended to change the theory of the case or the identity of the offense charged. *Wright v. State,* 593 N.E.2d 1192, 1197 (Ind.1992), *cert. denied,* 506 U.S. 1001, 113 S.Ct. 605, 121 L.Ed.2d 540. However, an information may be amended at any time to cure a defect if the substantial rights of the defendant are not prejudiced. *Id.* If a defense under the original information would be equally applicable to the information in one form as the other, then the amendment is one of form and not one of substance. *Sharp v. State,* 534 N.E.2d 708, 714 (Ind.1989), *reh'g. denied, cert. denied,* 494 U.S. 1031, 110 S.Ct. 1481, 108 L.Ed.2d 617 (1990).

At trial, the charging information read, in pertinent part:

> [Hart], on March 11, 1994, in Clay County, Indiana:
>
> Ct. #1 intentionally fled from lawful detention and drew a deadly weapon while committing it, namely fled from Deputy Daniel L. Wheeler of the Clay City Town Marshal's Office after having been lawfully detained, and drew a handgun.
>
> Ct. #2 communicated a threat to another person with the intent that the other person engage in conduct against his will or be placed in fear of retaliation for a prior lawful act, and while committing it drew a deadly weapon, namely a handgun on Deputy Daniel L. Wheeler of the Clay City Town Marshal's Office after he had lawfully detained the defendant, ordered Wheeler to "just keep on going" and caused Wheeler to leave against his will.

(R. 30). During his defense, Hart testified that the weapon which scared Wheeler was a

BB gun, not a nine-millimeter handgun. At the close of evidence, the State moved to amend the charging information to describe the deadly weapon as "a handgun or other instrument that is defined as a deadly weapon." (R. 165). The court allowed the amendment and instructed the jury that:

> The term "deadly weapon" is defined by law as meaning:
>
> a. a loaded or unloaded firearm; or
>
> b. a weapon, device, or other material that in the manner it is used, or could ordinarily be used, or is intended to be used, is readily capable of causing serious bodily injury.

(R. 119). This definition leaves out some of the possible weapons listed in the statute defining the term "deadly weapon"; otherwise, it tracks the statute. *See* Ind.Code 35–41–1–8.

Hart contends that the State's pre-amendment characterization of the deadly weapon as a "handgun" prejudiced him by causing him to forego a possible defense. He argues that if the State would have timely amended the charging information, he would have elicited testimony "as to the inner workings of the BB gun and whether it actually contained a BB so as it could have caused serious bodily injury." Appellant's Brief at 45. Thus, he reasons that the jury could have found that the BB gun was not a deadly weapon because it was not "readily capable of causing serious bodily injury."

■ Our appellate courts have previously held that pellet or BB guns can be considered deadly weapons within the statute. *See e.g.*, *Glover v. State*, 441 N.E.2d 1360, 1362 (Ind.1982); *Miller v. State*, 616 N.E.2d 750, 755 (Ind.Ct.App.1993); *Williams v. State*, 451 N.E.2d 687, 690–91 (Ind.Ct.App.1983). The question of whether a weapon is a deadly weapon is one for a properly instructed jury to determine from a description of the weapon, the manner of its use, and the circumstances of the case. *Frey v. State*, 580 N.E.2d 362, 364 (Ind.Ct.App.1991), *trans. denied*. In *Rogers v. State*, 537 N.E.2d 481, 485 (Ind.1989), *reh'g. denied*, our supreme court held that a jury was warranted in finding a disabled gun to be a deadly weapon because its realism put the victims in fear for their lives.

In the present case, the BB gun was introduced into evidence. Hart explained that it was spring-loaded and that it propelled a BB. Wheeler testified that the weapon pointed at him placed him in fear for his life. Even assuming the jury believed Hart's testimony that the gun was a BB gun instead of a nine-millimeter handgun, the jury's verdict was warranted under the reasoning of *Rogers*. The proposed defense would have been to no avail; therefore, the lack of an opportunity to raise the defense did not prejudice Hart. *See Kindred v. State*, 540 N.E.2d 1161, 1170 (Ind.1989) (holding that even a substantial amendment does not require reversal if there is no showing of prejudice).

## V. DOUBLE JEOPARDY

■ Hart contends that his convictions and sentences for Escape while using a deadly weapon and Intimidation with a deadly weapon violate the prohibition against double jeopardy. In support of his contention, he cites *Abron v. State*, 591 N.E.2d 634 (Ind.Ct.App.1992), in which we found a violation of double jeopardy where one conviction was for a lesser included offense of the other.

■ The prohibition against double jeopardy is violated when the defendant is convicted and sentenced for two separate crimes which are based upon the same act or the same conduct. *Lingler v. State*, 635 N.E.2d 1102, 1105 (Ind.Ct.App.1994), *reh'g. denied*, *affirmed as to this issue*, 644 N.E.2d 131 (Ind.1994). However, "double jeopardy is not violated by elevating the level of multiple felony charges on the basis that the defendant was armed with a deadly weapon while committing separate and distinct crimes." *Id.* Here, the evidence presented at trial shows that Hart forced Wheeler to retreat by use of a deadly weapon; this act constituted the offense of Intimidation. The evidence also shows that the use of the deadly weapon enabled Hart to escape from lawful detention; this act constituted the offense of Escape. The use of the deadly weapon occurred during the course of two distinct offenses; therefore, *Lingler*, not *Abron*, is applicable. Hart was not placed in double

jeopardy by the enhancement of Intimidation and Escape.

## CONCLUSION

Hart was not prejudiced by the trial court's instructions or by the amendment to the information. The evidence was sufficient to support his convictions; directed verdicts were not appropriate. The issue of exclusion of evidence was waived. Finally, the enhanced convictions of Intimidation and Escape did not violate the constitutional prohibition against double jeopardy.

Affirmed.

RUCKER and GARRARD, JJ., concur.