Frenshell **HAYWORTH, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A04–0302–CR–61.

Court of Appeals of Indiana.

Nov. 13, 2003.

Michael E. Caudill, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Nandita G. Shepherd, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Frenshell Hayworth (Hayworth), appeals her convictions for Counts II and V, theft, Class D felonies, Ind.Code § 35–43–4–2.

We affirm.

### ISSUE

Hayworth raises one issue on appeal, which we restate as follows: whether the evidence presented by the State was sufficient to support her convictions for two counts of theft.

### FACTS AND PROCEDURAL HISTORY

On May 24, 2002, Hayworth worked as a part-time sales associate at Fashion Cents, a women's clothing store in Indianapolis, Indiana. At that time, the store had an on-going sales contest, in which an associate who had the highest dollar amount in sales during the month would receive a gift certificate. Also on that date, Hayworth sold $417.68 worth of merchandise to a female customer. During the transaction, the customer used a credit card issued to

Laura VanVoorhis[1] (the VanVoorhis card) to pay for the merchandise. For credit card sales, the company policy required the sales associate to follow the procedure of swiping the credit card through a slot on the cash register to ring up the sale. The company policy also required the associate to check the customer's identification, signature, and the credit card information. In the event that the credit card could not be successfully swiped through the cash register, the associate was required to manually enter the credit card number and the expiration date into the cash register and to make an imprint of the same credit card; this was accomplished by putting the credit card on a flat surface, laying the credit card receipt on top of the credit card, and rubbing the pencil over the credit card. However, Hayworth did not swipe the credit card through the cash register; instead, she manually entered a credit card account number and the expiration date of an account belonging to Jay Doner (the Doner account)[2]. Furthermore, Hayworth did not make an imprint of the credit card[3]. The customer signed her name on the credit card receipt as "Carry William".

On May 29, 2002, Hayworth sold $498.47 worth of merchandise to a female customer. The customer gave Hayworth the VanVoorhis card to pay for the merchandise. Again, Hayworth did not swipe the credit card through the cash register. Instead, Hayworth manually entered the number and the expiration date of the Doner account into the cash register. The customer signed her name on the credit card receipt as "Jackie Downs". During the transaction, Hayworth called over Pamela Taylor (Taylor), the store manager, to assist her in making a pencil imprint of the credit card on the credit card receipt. Taylor went over to assist Hayworth and asked Hayworth for the credit card and the receipt. Since Hayworth had previously given the credit card back to the customer, she requested to see the credit card again[4]. After Taylor made an imprint of the card, the card was returned to the customer. Taylor and Hayworth then put the slip into the cash register drawer.

A few minutes later, Hayworth mentioned to Taylor that this was the second time in the same week that someone made a purchase over $400. Typical sales for the store were between $40 to $50. Taylor then pulled the receipt from the cash register drawer and noticed that the credit card number on the receipt did not match that of the imprint and that the name on the imprint did not match the signature on the receipt. As a result, Taylor questioned Hayworth about whether she asked the customer for identification when processing the transaction. Hayworth responded, "yes." (Transcript p. 31). Taylor opined that the customer must have

---

1. At trial, VanVoorhis testified that her purse and credit card had been stolen and that she had reported the theft to the police earlier in May of 2002. In addition, VanVoorhis testified that she did not authorize the May 24 or May 29 transactions at Fashion Cents.

2. Doner's credit card never physically left his possession nor did he authorize the use of it.

3. Because Hayworth was relatively new to the job, she had not been trained to make a pencil imprint of the credit card prior to the May 24, 2002 transaction. Consequently, the credit card had not been successfully swiped and no imprint of the credit card was made to show that the card was present at that transaction per company policy. Taylor was subsequently informed of this and trained Hayworth on approximately May 26, 2002, on the procedure for making a pencil imprint of the credit card.

4. Taylor testified that she "assumed" the credit card had already been swiped unsuccessfully

handed her the wrong credit card for the imprint. Because of the discrepancy, Taylor told Hayworth she was not going to call the sale in as a high sale. She also told Hayworth that she assumed if there were a problem with the discrepancy, the home office would call them to inquire. At trial, Taylor further explained that the sale had been approved for the credit card account number entered into the cash register, which indicated to her that the card for the account entered into the cash register had not been reported lost or stolen. Consequently, Taylor did not anticipate any problems with the sale.

Loretta Harris (Harris), the regional director for Fashion Cents, noticed the receipts because of the unusually large amount of the sales and the discrepancies of signatures. Harris then contacted Hayworth and asked her about these discrepancies. As mentioned above, it was part of the regional company policy for the sales associate to check the customer's identification, signature, and the credit card information. Additionally, the company policy required that if the signature does not match the name on the credit card, the sales associate should either refuse to take the credit card charge or the sales associate should call a manager to get approval. Hayworth told Harris that she did not notice the different signatures on the receipt for each sale.

On June 19, 2002, Harris reported the two transactions to the Marion County Sheriff's Department as unauthorized credit charges. Deputy Kevin Wethington (Deputy Wethington) spoke to Hayworth about both incidents. Hayworth told Deputy Wethington that the May 24 transaction was with a female. Hayworth also told Deputy Wethington that during the May 29 transaction, the magnetic strip of the credit card did not work when she attempted to scan it through the machine.

Thus, Hayworth had to manually enter the number and make a physical imprint of the card. Further, Hayworth told Deputy Wethington that the credit card signature matched the identification of the customer.

On July 10, 2002, Detective Brigid Barnes (Detective Barnes), the lead investigator, interviewed Hayworth. Hayworth told Detective Barnes that two different women came to the store on May 24 and May 29. Hayworth further told Detective Barnes that during the transactions, the women presented the same card to her. Each time, Hayworth entered the credit card number manually. Hayworth also stated that she checked the identification and the credit card of the customer and the name on the identification and credit card was VanVoorhis'. However, Hayworth stated that each customer signed the receipt with a different name than VanVoorhis. Hayworth admitted that she did not do anything about it at the time. On July 16, 2002, Detective Barnes interviewed Hayworth again. During that interview, Hayworth admitted to Barnes that she had lied about checking the identification.

On September 25, 2002, the State filed an information against Hayworth, charging her with Count I, forgery, a Class C felony, I.C. § 35–43–5–2; Count II, theft, a Class D felony, I.C. § 35–43–4–2; Count III, fraud, a Class D felony, I.C. § 35–43–5–4; Count IV, forgery, a Class C felony, I.C. § 35–43–5–2; Count V, theft, a Class D felony, I.C. § 35–43–4–2; and Count VI, fraud, a Class D felony, I.C. § 35–43–5–4. On January 15, 2003, a bench trial was held. At the conclusion of the trial, the trial court found Hayworth guilty of Counts II and V, theft, Class D felonies. Hayworth was acquitted on Counts I and IV. The trial court also found that double jeopardy precluded conviction on Counts III and VI.

A sentencing hearing was also held on January 15, 2003. The trial court sentenced Hayworth to 545 days on each of Counts II and V, with the sentences to run concurrently. In addition, the trial court placed Hayworth on probation for 545 days with the following conditions: (1) 100 hours of community work service, (2) $1,832.30 restitution to Fashion Cents, and (3) theft counseling at the National Corrective Training Institute.

Hayworth now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Sufficiency of Evidence*

Hayworth argues that the evidence was insufficient to convict her of either count of theft. Specifically, Hayworth asserts that she did not exercise unauthorized control over the merchandise in either alleged incident, as required by I.C. § 35–43–4–2(a). Additionally, Hayworth alleges that the State did not present sufficient evidence to prove that she intended to deprive Fashion Cents of its property.

### A. *Standard of Review*

■ Our standard of review with regard to sufficiency claims is well settled. We neither reweigh the evidence nor assess the credibility of the witnesses. *Cox v. State*, 774 N.E.2d 1025, 1028–29 (Ind.Ct. App.2002). We consider only the evidence favorable to the judgment and all reasonable inferences which can be drawn therefrom. *Alspach v. State*, 755 N.E.2d 209, 210 (Ind.Ct.App.2001), *trans. denied*. The conviction will be affirmed if there is substantial evidence of probative value to support the conclusion of the trier of fact. *Cox*, 774 N.E.2d at 1028–29. A judgment may be sustained based on circumstantial evidence alone if that circumstantial evidence supports a reasonable inference of guilt. *Maul v. State*, 731 N.E.2d 438, 439

(Ind.2000). We are also mindful that the trier of fact, not this court, determines the credibility of the witnesses, and a theft conviction may be sustained by circumstantial evidence. *Ward v. State*, 439 N.E.2d 156, 159 (Ind.1982).

Indiana Code section 35–43–4–2(a) provides, in pertinent part:

A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a Class D felony.

Thus, in order to convict Hayworth for theft, the State was required to prove that Hayworth knowingly or intentionally exerted unauthorized control over Fashion Cents' merchandise, with the intent to deprive Fashion Cents of the value of its merchandise on May 24, 2002 and on May 29, 2002. *See* I.C. § 35–43–4–2(a).

### B. *Unauthorized Control*

■ First, Hayworth argues that the evidence was insufficient to show that she exerted unauthorized control over the merchandise on either May 24 or May 29, 2002. In particular, Hayworth asserts that she acted within her authority as a sales associate and with the intent to make a credit card sale to the best of her ability and training. Conversely, the State argues that the evidence was sufficient for the trial court to conclude that Hayworth exerted unauthorized control over Fashion Cents' merchandise.

In the instant case, we need look no further than Indiana Code section 35–43–4–1(b)(2) to conclude that there is sufficient evidence to determine that Hayworth's control over the merchandise was unauthorized. Indiana Code section 35–43–4–1(b)(2) states that, "a person's control over property of another person is 'unauthorized' if it is exerted … in a

manner or to an extent other than that to which the other person has consented[.]" Here, the evidence shows that Fashion Cents' regional company policy requires the sales associate in a credit card sale to verify that the names and the signatures on the identification card and the credit card match, and that the picture on the identification card and the customer match. In the event that the signature on the identification card and the credit card differ, the policy further requires the sales associate to refuse the credit charge or to call a manager for approval. Our review of the record shows that Hayworth did not follow this policy. Hayworth told Detective Barnes that she knew two women used the VanVoorhis card when purchasing the merchandise, but nevertheless, she continued to process the sales.

When Detective Barnes initially interviewed Hayworth, she told the detective that she checked the ID and that she verified that each customer was VanVoorhis. However, during the second interview, Hayworth admitted to lying about checking the identification. The evidence shows that Hayworth's control over the merchandise was "unauthorized," pursuant to I.C. § 35–43–4–1(b)(2), in that: (1) the merchandise belonged to Fashion Cents; (2) Fashion Cents has a regional company policy requiring sales associates to verify the identification of the person using the credit card with the name on the credit card; and (3) Hayworth disregarded the company policy and allowed the merchandise to be purchased. Therefore, her control over Fashion Cents' merchandise on May 24 and May 29, 2002 was exercised in a manner that is inconsistent with Fashion Cents policy for credit sales. *See* I.C. § 35–43–4–1(b)(2).

Accordingly, we conclude that Hayworth's control of the merchandise was unauthorized, as defined by I.C. § 35–43–4–1(b)(2). Moreover, since we have determined that Hayworth's control of the merchandise was unauthorized under I.C. § 35–43–4–1(b)(2), we need not address whether Hayworth's control of the merchandise was unauthorized under any of the other subparagraphs of I.C. § 35–43–4–1(b). *See Johnson v. State*, 593 N.E.2d 208, 209 (Ind.Ct.App.1992) ("[w]hen proof is made under one of 4–1(b)'s subparagraphs, the others are mere surplusage. No further proof is required."). Accordingly, we find that the trial court did not err in finding that Hayworth exerted unauthorized control over Fashion Cents' merchandise on May 24 and May 29, 2002.

### C. *Intent to Deprive*

Next, Hayworth alleges that the State presented insufficient evidence to prove that Hayworth had the necessary criminal intent to deprive Fashion Cents of its merchandise in the May 24 and May 29 transactions. Specifically, Hayworth argues that she acted within her authority as a cashier as approved by the district manager. Indiana Code section 35–41–2–2 states that, "[a] person engages in conduct "intentionally" if, when he engages in the conduct, it is his conscious objective to do so." We have previously held that, "intent is a mental function and without a confession, it must be determined from a consideration of the conduct, and the natural consequences of the conduct." *Duren v. State*, 720 N.E.2d 1198, 1202 (Ind.Ct.App. 1999) (citing *Brant v. State*, 535 N.E.2d 189, 191 (Ind.Ct.App.1989)). Accordingly, intent may be proven by circumstantial evidence. *Duren*, 720 N.E.2d at 1202. Further, [i]ntent may be inferred from a defendant's conduct and the natural and usual sequence to which such conduct logically and reasonably points. *Id.* The trier of fact is entitled to infer intent from the surrounding circumstances. *Hart v. State*, 671 N.E.2d 420, 426 (Ind.Ct.App.1996).

In the present case, the evidence shows that Hayworth knowingly and intentionally exerted unauthorized control over Fashion Cents' merchandise. The record reflects that Hayworth was employed as a cashier at Fashion Cents and was informed of the company policy regarding credit card sales. In particular, the policy requires that the cashier verify the identification, the credit card information, and the signature of a customer before a transaction may be completed. Further, the record clearly shows that Hayworth understood the company policy and that she knowingly completed the May 24 and May 29 transactions without properly following the required procedures. Specifically, the record reveals that Hayworth told Detective Barnes that she was aware that two different women on two separate occasions were attempting to use VanVoorhis's identification cards; however, she continued to process the sales. Moreover, on each sale, Hayworth manually entered the Doner account number and the expiration date even though that credit card never left Doner's possession. Thus, we conclude that the evidence supports the inference that Hayworth intended to deprive Fashion Cents of the value of its merchandise. *See Hart*, 671 N.E.2d at 426.

Hayworth claims that she negligently exerted unauthorized control over Fashion Cents' merchandise; nevertheless, we find that Hayworth's argument is without merit. As mentioned above, a judgment may be sustained based on circumstantial evidence alone if that circumstantial evidence supports a reasonable inference of guilt. *Maul*, 731 N.E.2d at 439. In the instant case, the trial court found that Hayworth knowingly and intentionally deprived Fashion Cents of its merchandise after reviewing all of the evidence. Now, Hayworth claims that the trial court could have inferred from the evidence that she was negligent in completing the sales on May 24 and May 29, 2002. In doing so, Hayworth is asking this court to re-weigh the evidence. This is an invitation we must decline. *See Cox*, 774 N.E.2d at 1028–29. Therefore, we find that there was sufficient evidence presented by the State to prove beyond a reasonable doubt that Hayworth knowingly and intentionally exerted unauthorized control over Fashion Cents' merchandise in the May 24 and May 29 transactions. Accordingly, we conclude that the trial of fact's determination was supported by sufficient evidence for Hayworth's convictions. *See id.*

## CONCLUSION

Based on the foregoing, we conclude that Hayworth was properly convicted of each count of theft, a Class D felony, I.C. § 35–43–4–2.

Affirmed.

FRIEDLANDER, J., concurs.

SULLIVAN, J., concurs with opinion.

SULLIVAN, Judge, concurring.

Although I concur, I believe it appropriate to note that Hayworth assisted the two bogus customers to commit theft on the two separate occasions. Therefore, pursuant to Ind.Code § 35–41–2–4 (Burns Code Ed. Repl.1998), Hayworth could have been convicted of the two thefts. This latter provision provides that one who aids another to commit an offense "commits that offense."