COMMONWEALTH of Kentucky,
Appellant,

v.

Johnny C. BISHOP and Christopher
Sester, Appellees.

No. 2006–SC–000123–DG.

Supreme Court of Kentucky.

Feb. 21, 2008.

Jack Conway, Attorney General, Bryan D. Morrow, Assistant Attorney General, Office of the Attorney General, Frankfort, KY, Counsel for Appellant.

Stephan Charles, Manchester, KY, Counsel for Appellee, Johnny C. Bishop.

Charles Edward Keith, Keith Law Office, PSC, Manchester, KY, Counsel for Appellee, Christopher Sester.

Opinion of the Court by Justice ABRAMSON.

On March 15, 2004, Detective Patrick Robinson of the Manchester City Police Department arrested Appellees Johnny Bishop and Christopher Sester for drug-related offenses at a residence located outside of the Manchester city limits but within Clay County, Kentucky. After the grand jury returned indictments against

both men, Bishop filed a motion to dismiss, which Sester joined, arguing that the arrest was unlawful because it was effectuated by a Manchester city policeman and occurred outside of the Manchester city limits. Bishop based his argument on a 1987 Municipal Order that amended certain sections of the Manchester Personnel System, the pertinent amendment being that all Manchester city police were to remain within the city limits unless an emergency arose. Despite KRS 95.019, which gives city police county-wide arrest powers, the trial court agreed with Bishop, and on October 13, 2004, entered an order dismissing Bishop's indictment because it was based on an unlawful arrest. The Court of Appeals affirmed and, upon the Commonwealth's motion, this Court granted discretionary review. After reviewing the applicable law, we find that the 1987 Municipal Order, while valid, does not affect Manchester city police officers' statutorily authorized county-wide arrest powers. Therefore, we reverse the Court of Appeals decision, reinstate the indictments against Bishop and Sester, and remand this case for further proceedings not inconsistent with this opinion.

## RELEVANT FACTS

This case began with the arrest of Bishop and Sester, just outside of the fourth-class city of Manchester, Kentucky. On March 15, 2004, members of the Manchester City Police Department, accompanied by Kentucky State Trooper Joe Lucas, drove to Bishop's residence, located at 1518 Bray Creek Road in Clay County, Kentucky, to pursue a drug investigation. Upon arriving, Melinda Adams, who was apparently living with Bishop at the time, gave the officers consent to search the residence. During their search, the officers discovered drug paraphernalia inside the house and a methamphetamine lab outside of the house. Detective Patrick Rob-

inson then arrested Bishop and Sester, who were both present at the scene. On May 26, 2004, the Clay County grand jury indicted Bishop on four counts and Sester on three counts of drug-related offenses. On August 30, 2004, Bishop filed a motion to dismiss the indictment. The trial court held a hearing on September 1, 2004, during which Sester orally joined Bishop's dismissal motion.

Bishop argued that due to a municipal order enacted by the City of Manchester on April 20, 1987, Detective Robinson had no jurisdiction to arrest him outside of the Manchester city limits and thus, his arrest was unlawful. The 1987 Municipal Order on which Bishop relies was enacted to amend certain portions of Part 1, the Policies and Procedures section, of the Manchester Personnel System, which the city adopted on July 18, 1983. Bishop focused on Section 8.1(2) of the Personnel System's Policies and Procedures, which the 1987 Municipal Order amended to include the provision that "[n]o city policeman or police car is to leave the Manchester City limits while on duty, unless an emergency arises." Even though Bishop acknowledged that KRS 95.019 gives city police officers in fourth-class cities the same county-wide arrest powers as sheriffs, he argued that the City of Manchester nonetheless properly restricted that arrest power to its own geographical limits by enacting the 1987 Municipal Order. Thus, Bishop contended, his arrest by a Manchester city police officer outside of the city limits was invalid.

The trial court agreed, and on October 13, 2004, entered an order granting Bishop's motion to dismiss his indictment. The Court of Appeals affirmed the trial court's dismissal, finding that the City of Manchester acted within its authority when it limited the patrol area of the Manchester city police and that the 1987 order made

Detective Robinson's county-wide arrest unlawful. The Commonwealth petitioned this Court for discretionary review, which we granted. In reversing the Court of Appeals, we find that Manchester's 1987 Municipal Order is valid; does not expressly conflict with KRS 95.019; and does not affect a Manchester city police officer's ability to arrest offenders outside of the city limits. Rather, the amendment to Section 8.1 simply modifies an internal, personnel policy for Manchester city police officers, the violation of which results in internal discipline, not in a declaration that the arrest itself is unlawful. Therefore, we reinstate Bishop's and Sester's indictments and remand this case to the Clay Circuit Court.

## ANALYSIS

■ The Clay Circuit Court dismissed the indictments against Bishop and Sester because it found that the arresting officer lacked the authority and jurisdiction to effectuate their arrest outside of the Manchester city limits. As a preliminary matter, we note the strictures imposed by Kentucky law on trial judges who are asked to summarily dismiss criminal indictments. This Court has consistently held that a trial judge has no authority to weigh the sufficiency of the evidence prior to trial or to summarily dismiss indictments in criminal cases. *Commonwealth v. Hayden*, 489 S.W.2d 513, 516 (Ky.1972); *Barth v. Commonwealth*, 80 S.W.3d 390, 404 (Ky.2001); *Flynt v. Commonwealth*, 105 S.W.3d 415, 425 (Ky.2003). However, there are certain circumstances where trial judges are permitted to dismiss criminal indictments in the pre-trial stage. These include the unconstitutionality of the criminal statute, *Hayden*, 489 S.W.2d at 514–515; prosecutorial misconduct that prejudices the defendant, *Commonwealth v. Hill*, 228 S.W.3d 15, 17 (Ky.App.2007); a defect in the grand jury proceeding, *Par-*

*tin v. Commonwealth*, 168 S.W.3d 23, 30–31 (Ky.2005); an insufficiency on the face of the indictment, *Thomas v. Commonwealth*, 931 S.W.2d 446 (Ky.1996); or a lack of jurisdiction by the court itself, RCr 8.18.

In this case, the trial court stated that it was dismissing the indictments against Bishop and Sester for "want of jurisdiction." However, the Clay Circuit Court clearly had jurisdiction over this case because the offense occurred and the arrest was made in Clay County, Kentucky. Thus, the "want of jurisdiction" referred to by the trial court appears to be that of the arresting officer, Detective Robinson. Whether an indictment premised on an arrest by a police officer who acted outside his lawful jurisdiction should be subject to pre-trial dismissal is an issue of first impression that this Court need not address at this time. A review of the relevant statutes establishes that Detective Robinson did not exceed his arrest powers, but rather, acted within the scope of his authority when he arrested Bishop and Sester within Clay County, Kentucky. Thus, the trial court erred by dismissing the indictments in this case.

**Manchester's 1987 Municipal Order Is Valid and Does Not Conflict with KRS 95.019.**

■ Neither party in this case disputes that KRS 95.019 and Kentucky case law give city police officers in fourth-class cities county-wide arrest powers. KRS 95.019(1) states that

The chief of police and all members of the police force in cities of the first through fifth classes shall possess all of the common law and statutory powers of constables and sheriffs. They may exercise those powers, including the power of arrest for offenses against the state, anywhere in the county in which the city

is located, but shall not be required to police any territory outside of the city limits.

In *Commonwealth v. Monson,* 860 S.W.2d 272, 273 (Ky.1993), this Court interpreted KRS 95.740(1), which was repealed in 1994 and replaced with KRS 95.019, as clearly giving police officers of fourth-class cities the same county-wide arrest powers as sheriffs. Thus, with this matter not in contention, the main issue in this case is the validity of Manchester's 1987 Municipal Order and its effect, if any, on the arrest powers conferred on city police officers in KRS 95.019.

KRS 83A.060(13) states that "[i]n lieu of an ordinance, a municipal order may be used for matters relating to the internal operation and functions of the municipality ..." In addition, KRS 82.082(1) states that "[a] city may exercise any power and perform any function within its boundaries ... that is in furtherance of a public purpose of the city and not in conflict with a constitutional provision or statute." The 1987 Manchester Municipal Order both related to an "internal operation" and furthered "a public purpose" of the municipality. The 1987 Municipal Order amended certain sections of the Manchester Personnel System, which, according to the July 1983 Ordinance, was enacted in order to "have rules and regulations in a single written document delineating all aspects of employment with the city and available to each of the employees affected by said rules and regulations." Some of the sections of the Personnel System that were amended were entitled "Hours of Work," "Liability Insurance," "Holidays," "Vacation," and "Sick Leave." As evident from its subject matter, the 1987 Municipal Order clearly related to the internal policies and procedures governing Manchester city employees, including city police officers. Furthermore, by adopting the 1987 order, Manchester advanced the public purpose of setting forth specific employment regulations and communicating them to city employees.

The 1987 Municipal Order is also a valid exercise of Manchester's authority pursuant to the dictates of KRS 82.082 because it does not conflict with KRS 95.019. Subsection (2) of KRS 82.082 states:

A power or function is in conflict with a statute if it is expressly prohibited by a statute or there is a comprehensive scheme of legislation on the same general subject embodied in the Kentucky Revised Statutes including, but not limited to, the provisions of KRS Chapters 95 and 96.

Nothing in KRS 95.019 expressly prohibits a city from creating an internal policy that requires its police officers to remain within the city limits, absent an emergency, while they are on duty. Similarly, there is no "comprehensive scheme of legislation" in Kentucky's statutes regarding a fourth-class city's choice to limit the patrol area of its police officers. If anything, KRS 95.019(1) envisions the type of policy adopted in Manchester's 1987 Municipal Order when it states that members of a fourth-class city's police force "shall not be required to police any territory outside of the city limits." Therefore, while KRS 95.019 expressly gives these city police officers the power to make county-wide arrests, it recognizes that county-wide authority does not mean patrol responsibility beyond the city limits. In sum, the City of Manchester was within its authority when it amended Section 8.1 of the Manchester Personnel System policies and the 1987 Municipal Order does not conflict with KRS 95.019.

**The 1987 Municipal Order Amends an internal Personnel Policy And Does Not Displace Manchester's City Police Officers' County–Wide Arrest Powers.**

The effect of a patrol-area restriction on a city police officer's county-wide

arrest power is a matter of first impression for this Court. However, we find persuasive the conclusions drawn by the Indiana Court of Appeals in *Hart v. Indiana,* 671 N.E.2d 420 (Ind.App.1996). In that case, Clay City Deputy Town Marshal Daniel Wheeler detained Harry Hart in an area outside of the Clay City limits. *Id.* at 423. At trial, Hart introduced a Clay City town document stating that the Deputy Town Marshal's "activity is *PRIMARILY RESTRICTED TO THE TOWN LIMITS,*" unless the Marshal is giving assistance to another law enforcement agency, is in hot pursuit, or is involved in an emergency. *Id.* at 425 (emphasis in original). Although none of the listed exceptions applied in Hart's case, the court nonetheless found that his detention by Marshal Wheeler was lawful. *Id.* The Indiana Court of Appeals stated:

> As a practical matter, the Town of Clay City wanted to limit the Deputy Town Marshal's activities outside the town limits. In other words, even though the town recognized that the Deputy Town Marshal had the power to make arrests anywhere in the State, it desired that he spend his time doing what the town paid him to do, *i.e.,* "to insure the security and protection of the citizens of Clay City." (R. 370). The limitations placed upon Deputy Town Marshal by the Town of Clay City were not meant to, and did not, render detentions outside the town limits unlawful. Therefore, while Wheeler's detention of Hart outside the town limits may or may not have been in violation of the practical terms of his employment, it was certainly not unlawful. *Id.*

Similarly, in Bishop's case, the City of Manchester's purpose in amending Section 8.1(2) was neither to prevent city police officers from exercising their county-wide arrest powers nor to render those arrests unlawful. Rather, it was to keep the officers within the city limits and ensure that they first and foremost "insure the security and protection" of the citizens of Manchester. *Id.* This conclusion is substantiated by Section 8.1(2)'s silence with regard to county-wide arrest powers; it merely states that city police should remain within the city limits unless an emergency occurs. This silence reinforces the fact that this city-limits restriction was not intended to, and does not, affect the arrest powers set forth in KRS 95.019. In other words, having a personnel policy that requires city police officers to remain within city limits does not mean that if those officers do go out into the county, even absent an emergency, their statutorily authorized arrest powers somehow dissipate or vanish. At most, the officers may have violated an employment regulation and be subject to appropriate discipline.

The plain language of the last section of the 1987 Municipal Order even suggests this interpretation. Section 8.1(6) as amended lists the appropriate punishments that should be imposed when city police officers violate the aforementioned rules and regulations. According to this "Violations of Rules and Regulations" provision, after the first infringement of these terms, the officer shall receive "3 days off without pay;" after the second offense, he shall have "1 week off without pay," and after the third offense, the employee shall be "dismissed." Thus, even the 1987 Municipal Order itself does not contemplate that an unauthorized county-wide arrest should result in that arrest being declared unlawful. The order simply lists the internal penalties that should be imposed on the officer. Since this amendment to the Policies and Procedures of the Manchester Personnel System involved an internal employment regulation and did not disturb city police officers' county-wide arrest powers, Detective Robinson's arrest of Bishop and Sester in Clay County was

lawful, even though it may have resulted in a violation of the terms of his employment.[1]

## CONCLUSION

By enacting the 1987 Municipal Order, the City of Manchester validly amended its internal, personnel system and required its city police officers to remain primarily within the city limits while they were on duty. However, limiting the officers' patrol area did not change the fact that KRS 95.019 grants all city police officers of fourth-class cities county-wide arrest powers. Thus, although effectuating a county-wide arrest in a non-emergency situation may subject a Manchester police officer to internal discipline, the arrest itself is lawful pursuant to KRS 95.019. Accordingly, we reverse the Court of Appeals, reinstate Bishop's and Sester's indictments, and remand this case for further proceedings not inconsistent with this opinion.

All sitting, except MINTON, J., not sitting. All concur.

---

1. Having concluded that Detective Robinson's arrest of Bishop and Sester was lawful because the 1987 order did not change the county-wide arrest powers conferred in KRS 95.019, we decline to address the Commonwealth's arguments that the presence of a Kentucky State Trooper validated the arrest or that the 1987 Municipal Order was invalid because of the procedural defects in its adoption.