**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Dec 07 2012, 9:26 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**VALERIE K. BOOTS**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

QUINN NELSON,                        )
                                     )
    Appellant-Defendant,             )
                                     )
       vs.                       )    No. 49A04-1203-CR-145
                                     )
STATE OF INDIANA,                    )
                                     )
    Appellee-Plaintiff.              )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Mark D. Stoner, Judge
Cause No. 49G06-1104-FA-22989

**December 7, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Quinn Nelson (Nelson), appeals his conviction for attempted murder, a Class A felony, Ind. Code §§ 35-42-1-1, 35-41-5-1(a); and his adjudication as an habitual offender, I.C. § 35-50-2-8.

We affirm.

## ISSUE

Nelson raises one issue on appeal, which we restate as the following: Whether the State presented sufficient evidence beyond a reasonable doubt to sustain Nelson's conviction.

## FACTS AND PROCEDURAL HISTORY

Nelson and Rebecca Mumaw (Mumaw) lived together at Mumaw's home on the near northeast side of Indianapolis. By April 2011, they had been in a relationship for six months, but Mumaw wanted to end it. She had previously told Nelson of her intention.

On April 1, 2011, Nelson arrived at the home around 5:00 p.m. and began drinking whiskey with Mumaw. The evening started well, but then both became intoxicated. The couple began to push and argue with each other, which was not unusual in their relationship. After midnight, Nelson left the home and Mumaw went to bed. Early the following morning, around 5 a.m., Mumaw woke up and went to her kitchen.

Nelson had returned and the two began arguing. He told Mumaw that, "I'll make sure you're never with anyone else." (Transcript p. 36). At the time, Mumaw was

2

wearing a red top and jeans. Nelson stood in front of Mumaw and poured fluid on her and set her on fire. Mumaw did not see the fluid but felt her upper chest get wet and smelled a "real sour smell." (Tr. p. 35). As Mumaw's skin and face were burning, Nelson tried to pat the fire out, telling her, "Baby, I'm sorry." (Tr. p. 17). Nelson left the home thereafter. Around 6 a.m., Nelson called 911 from one of his cell phones to report that Mumaw was badly burned and gave the operator directions to Mumaw's home.

Police, firemen, and the paramedics arrived at Mumaw's home. Mumaw was found standing on a sidewalk outside her home and wearing a one-piece dress. She shouted, "[i]t burns, it burns." (Tr. p. 45). Recognizing that she suffered serious burns from the waist up, paramedics grabbed Mumaw and wrapped her in sterile linen sheets and transported her to a hospital. Paramedics noted that Mumaw was extremely anxious and asked her how this had happened to her. Although not responding at first, Mumaw explained that "my boyfriend doused me with lighter fluid and set me on fire." (Tr. p. 55). Mumaw later identified her boyfriend as Nelson. At the hospital, Mumaw was placed in an induced coma. She remained hospitalized for approximately eight weeks, during which time one of her breasts was removed and she underwent debridement and skin grafting as part of her treatment. Burns covered approximately forty-two percent of her body.

After Mumaw was taken to the hospital, two homicide detectives from the Indianapolis Metropolitan Police Department arrived at her home. A search warrant for the home was later obtained. An arson detective and Lieutenant Ron Marks (Lieutenant

3

Marks), a fire marshal from the Indianapolis Fire Department, arrived to conduct an investigation on the cause and origin of the fire. They examined the exterior of the house to look for possible causes of the fire, but found nothing. Going inside the home, the team conducted a brief examination to find obvious indications of an accidental cause of the fire. Finding none, the team set out to painstakingly photograph the house and collect evidence. A partially full bottle of charcoal lighter fluid was found in the living room and a rolled up piece of carpet had a linoleum tile from the kitchen affixed to it. The rolled up carpet contained a pair of jeans. A struck match was found in the dining room. In the bathroom, burnt material resembling singed human hair was found floating in the tub, as well as in and around the sink. In the bedroom, officers found a partially burnt red shirt along with a cigarette lighter on the nightstand. The blanket on the bed had burnt material on it. The charcoal lighter fluid, jeans, and other material were taken as evidence.

Returning to his office, Lieutenant Marks completed his origin and cause report, concluding that the fire was an incendiary fire with no accidental cause. Thereafter, Lieutenant Marks went back to Mumaw's neighborhood. After learning that Nelson's sister lived close by, Lieutenant Marks found Nelson at her home and brought him to the station for an interview. Nelson was first searched and a metal can of Zippo cigarette lighter fluid along with three cigarette lighters were found. Nelson denied all knowledge of the incident, explaining that he was at his sister's house at the relevant time. However,

4

Nelson's sister was also interviewed and denied that Nelson had been at her house at the time. In a subsequent interview, Nelson denied making the 911 call.

On April 7, 2011, the State filed an Information charging Nelson with attempted murder, a Class A felony, I.C. §§ 35-42-1-1, 35-41-5-1(a). On June 7, 2011, the State charged Nelson with being an habitual offender, I.C. § 35-50-2-8. In the interim, homicide detectives received two unsigned letters from Mumaw's mother-in-law, which had been sent to Mumaw from Nelson. Nelson had addressed the envelopes using the name of a fictitious inmate at the Department of Correction. Both letters requested Mumaw not to testify regarding the incident. On January 30, 2012, a bifurcated bench trial was held. At the close of the evidence, the trial court found Nelson guilty of attempted murder and subsequently of being an habitual offender.

On March 2, 2012, the trial court held a sentencing hearing and sentenced Nelson to forty years on the attempted murder conviction, enhanced by thirty years for his adjudication as an habitual offender, for an aggregate sentence of seventy years.

Nelson now appeals. Additional facts will be provided as necessary.

### DISCUSSION AND DECISION

Nelson argues that there was insufficient evidence to support his conviction beyond a reasonable doubt for attempted murder. When reviewing sufficiency of the evidence claims, we will not reweigh the evidence or assess the credibility of the witnesses. *See Sargent v. State*, 875 N.E.2d 762, 767 (Ind. Ct. App. 2007). Only that evidence which is most favorable to the judgment, together with all reasonable inferences

5

that can be drawn therefrom will be considered. *Id.* If a reasonable trier of fact could have found the defendant guilty based on the probative evidence and reasonable inferences drawn therefrom, then a conviction will be affirmed. *Id.* A judgment may be sustained based on circumstantial evidence alone if that circumstantial evidence supports a reasonable inference of guilt. *Hayworth v. State*, 798 N.E.2d 503, 507 (Ind. Ct. App. 2003).

Here, Nelson was convicted of attempted murder. To prove that a person has committed an attempt crime under I.C. § 35-41-5-1, the State must show that the defendant engaged in conduct that constitutes a substantial step toward the commission of the crime attempted, while acting with the same culpability of that crime. *Fry v. State*, 885 N.E.2d 742, 750 (Ind. Ct. App. 2008), *trans. denied*. However, our supreme court has emphasized the importance of requiring specific intent to kill before a defendant can be convicted of attempted murder, despite that the culpability requirement for murder includes the lesser standard of knowingly. *Id.* Thus, the State must prove that Nelson acted with the specific intent to kill Mumaw, and while doing so, engaged in a substantial step toward killing her. *See id.*

On appeal, Nelson contests the sufficiency of the State's evidence to prove beyond a reasonable doubt that he intended to kill Mumaw in two respects. First, he argues that the evidence was insufficient because the State's evidence that he poured lighter fluid on Mumaw and set her on fire was largely circumstantial. Second, Nelson asserts that even

6

if the State proved that he committed the act, it did not prove that he specifically intended to kill Mumaw.

In addressing Nelson's first contention, we find that direct evidence establishes that Nelson committed the crime. Mumaw testified that Nelson poured lighter fluid on her and lit her on fire. She also told a paramedic that Nelson committed this act. Further, Mumaw described how the incident occurred. She testified that before being lit on fire, Nelson was standing in front of her and she noticed that her upper chest became wet and she smelled a sour odor. She then felt her skin and face burning. The uncorroborated testimony of a single witness is sufficient to sustain a conviction on appeal. *Gregory v. State*, 885 N.E.2d 697, 704 (Ind. Ct. App. 2008), *trans. denied*. As a result, we conclude that Mumaw's testimony establishes that Nelson committed the act resulting in her injuries.

Turning to Nelson's argument regarding his specific intent to kill Mumaw, we note that intent must be determined from a consideration of the conduct and the natural consequences of the conduct. *See Mason v. State*, 944 N.E.2d 68, 73 (Ind. Ct. App. 2011), *trans. denied*. Accordingly, intent may be proven by circumstantial evidence. *Id*. The defendant's use of a deadly weapon in a manner to cause death or serious bodily injury is sufficient to imply intent to kill. *Nunn v. State*, 601 N.E.2d 334-339 (Ind. 1992). The Indiana Code defines a "deadly weapon" to include a "chemical substance, or other material" that in the manner it is, could ordinarily be, or is intended to be used, "is readily capable of causing serious bodily injury." *See* I.C. § 35-31.5-2-86(2). Here, Nelson used

7

lighter or other ignitable fluid coupled with fire as a deadly weapon to inflict serious bodily injury upon Mumaw. Further, Nelson made a number of statements during the incident that point to his guilt. Words may be indicative of intent. *See Tancil v. State*, 956 N.E.2d 1204, 1210 (Ind. Ct. App. 2011), *trans. denied*. Mumaw testified that Nelson said that he would never let her be with anyone else. In sum, the trial court could have therefore reasonably concluded that Nelson intended to kill Mumaw.

Finally, Nelson argues that his efforts after lighting Mumaw on fire "are inconsistent with an intent to kill" her. (Appellant's Br. p. 12). Specifically, Nelson contends that given his efforts to put out the fire and his 911 call, it is unreasonable to infer that he intended to kill. Essentially, Nelson argues that even if he initially acted with specific intent to kill Mumaw, his later efforts to put the fire out and render assistance to Mumaw negated his criminal intent. We disagree. Nelson's acts refer to conduct after the crime was committed. As discussed above, the State presented sufficient evidence to support the trial court's finding that he set Mumaw on fire and did so with the intent to kill her. We therefore affirm Nelson's conviction for attempted murder.

### CONCLUSION

Based on the foregoing, we conclude that the State presented sufficient evidence beyond a reasonable doubt to sustain Nelson's conviction.

Affirmed.

BAILEY, J. and CRONE, J. concur